UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**CENTRIFUGAL ACQUISITION CORP., INC.,**
d/b/a Centrifugal Castings,
a Delaware Corporation,

                Plaintiff,

                Case No. 09-C-327

     -v-

**JEFFREY A. MOON,**
**JM CASTING CO., LLC,** a Wisconsin limited liability
company, and
**U.S. BATTERY MFG. AUGUSTA, INC.** d/b/a
**U.S. BATTERY MANUFACTURING, CO.,**
a Georgia corporation,
**J. BENNETT MULLINAX,**
**NEAL P. PIEROTTI, and**
**DAVID KAPPOS,** Director of the United States
Patent and Trademark Office,

                Defendants.

---

## DECISION AND ORDER

### RE: United States Patent Application Serial Number 12/925,329

---

On March 5, 2012, the Court conducted a hearing on the Plaintiff Centrifugal Acquisition Corporation, Inc's ("CAC") emergency motion for contempt and for abandonment of the patent application and other relief, including a renewal of its motion for a temporary restraining order. Since all parties were heard, although Defendants J. Bennett Mullinax ("Mullinax"), Neal P. Pierotti ("Pierotti") (sometimes collectively referred to as the

"Mullinax law firm"), and David Kappos ("Kappos"), Director of the United States Patent and Trademark Office ("USPTO") have not entered appearances in this action, the subject order is a preliminary injunction pursuant to Rule 65(d) of the Federal Rules of Civil Procedure.

**APPLICABLE LAW**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To justify a preliminary injunction, CAC must show that it is likely to succeed on the merits of its claims, that it is likely to suffer irreparable harm without an injunction, that the harm that it would suffer without an injunction is greater than the harm that preliminary relief would inflict upon the defendants and that the injunction is in the public interest. *See Michigan v. U.S. Army Corps of Engrs.*, No. 10-3891, ___ F.3d ___, 2011 WL 3836457, at * 2 (7th Cir. Aug. 24, 2011), pet. for cert. filed, ___ U.S. ___, 80 BNA USLW 3283 (U.S. Oct. 26, 2011) (No. 11-541).

"The likelihood of success on the merits is an early measurement of the quality of the underlying lawsuit, while the likelihood of irreparable harm takes into account how urgent the need for equitable relief really is." *Id.* at *22. These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted. *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009). In considering irreparable harm, the question is whether the party seeking relief will suffer

irreparable harm in the interim period prior to the resolution of its claims. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am. Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

As explained in *United States Army Corps of Engineers*, No. 10-3891, 2011 WL 3836457, at * 22:

> For preliminary relief to be granted, the irreparable harm must also be likely. That is, there must be more than a mere possibility that the harm will come to pass, *Winter*, 555 U.S. at 21–23, 129 S.Ct. 365, but the alleged harm need not be occurring or be certain to occur before a court may grant relief, *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333, 72 S.Ct. 690, 96 L.Ed. 978 (1952); *Bath Indus., Inc. v. Blot*, 427 F.2d 97, 111 (7th Cir.1970). Commentators describe the required level of certainty this way: "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown. However, the injury need not have been inflicted when application is made or be certain to occur." 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2948.1, at 154-55 (2d ed. 1995).

### Findings of Fact

CAC established that issues of irreparable harm are raised by the imminent publication of the United States Patent Application Serial Number 12/925,329 by potential disclosure in that publication of the proprietary process deemed to be a trade secret by the Court. (*See* Court's February 2, 2012, permanent injunction (ECF No. 206) order.) (*See also* December 30, 2009, stipulated preliminary injunction (ECF No. 88).)

Paragraph I(1)(b) of the stipulated preliminary injunction prohibited Defendant Jeffrey A. Moon ("Jeffrey Moon") and JM Casting, LLC ("JM Casting") (collectively the "JM Defendants") among other defendants, and their officers, agents, servants, employees,

-3-

attorneys and representatives, and all persons, business and entities who are in active concert or participation with such persons, "from directly or indirectly . . . [f]urther utilizing and/or disclosing the Proprietary Process and/or Confidential Business Information. . ." The permanent injunction, by similar language appearing at page 47, makes permanent the restrictions contained in the preliminary injunction, and in pertinent part directly and indirectly restrains Jeffrey Moon, JM Casting and their officers, agents, servants, employees, attorneys, and any entity controlled by or in which they have an interest in, and all persons who are in active concert or participation with such persons, from "further using or disclosing the Proprietary Process and/or Confidential Business Information."

        CAC has presented evidence indicating that they are likely to prevail on the merits of their claim that the JM Defendants have violated the injunctions by: (a) disclosing the Proprietary Process to the Mullinax law firm (and Mullinax and Pierotti) as early as about August 17, 2010 and likely subsequently; (b) paying the Mullinax law firm for filing United States Patent Application Serial Number 12/925,329 (the "Patent Application") and obtaining drawings (from a third party) to support the Patent Application; (c) directing the Mullinax law firm to file and prosecute the Patent Application with the USPTO; and (d) not directing the Mullinax law firm to abandon the Patent Application under all of the circumstances and after notice of the Injunction Orders to the Mullinax law firm, and their litigation counsel Timothy D. St. Clair, and counsel of record for the JM Defendants. The JM Defendants may also have violated this Court's orders by disposing of property, equipment and materials relating to or which contain elements of the Proprietary Process

-4-

and/or the Confidential Business Information, on and after entry of the Preliminary Injunction, such as match plates, tooling, drawings, molds and similar items or materials.

While subject to the Preliminary Injunction, the JM Defendants filed the Patent Application with the USPTO through Mullinax and Pierotti, on or shortly after August 17, 2010. Patent applications, generally, are published 18 months from filing and that they "go to press" (and cannot be stopped) once internally (at the USPTO) categorized and submitted for publication, which is roughly four weeks prior thereto.

Assistant Attorney Lisa Warwick advised the Court that there are three steps that Jeffrey Moon, through patent counsel, the Mullinax law firm, can take to effectively stop publication of the patent application, while reserving the possibility of resuming the prosecution of the patent if this Court in the future finds that it does not contain trade secrets which CAC acquired. This development changes the balances of harms between the parties – reducing potential irreparable harm to Jeffrey Moon in the event that CAC does not establish that the subject patent contains CAC's protected trade secrets. Given CAC's likelihood of success on the merits and the balancing of the irreparable harm to CAC if its protected trade secrets are disclosed, CAC's renewed motion for preliminary injunctive relief is granted.

As required by Rule 65(c), CAC must post a $100,000.00 bond. This amount is subject to further input from the parties as to the appropriate amount of bond. *Roche Diagnostics Corp. v. Medical Automation Systems, Inc.*, 646 F.3d 424, 428 (7th Cir. 2011).

-5-

Case 2:09-cv-00327-RTR   Filed 03/05/12   Page 5 of 8   Document 240

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY PRELIMINARILY ORDERED THAT pending trial and final disposition of this matter or further order of the Court:**

CAC's renewed motion for injunctive relief (ECF No. 232) is **GRANTED** to the following extent:

The JM Defendants **MUST** file a copy of the patent application for in camera inspection;

The Commissioner of the United States Patent Office, David Kappos, **MUST** temporarily cease all efforts to publish the subject patent application, United States Patent Application Serial Number 12/925,329;

Jeffrey Moon **MUST** cause to be filed with the United States Patent and Trademark Office, a continuation application pursuant to 37 C.F.R. 1.53(b)(claiming benefit to the parent under 35 U.S.C. § 120), with a non-publication request pursuant to 37 C.F.R. § 1.213 (including a certificate that the application will not be filed abroad), with respect to United States Patent Application Serial Number 12/925,329;

Within one day of such filings, Jeffrey Moon **MUST** cause to be filed with United States Patent and Trademark Office, an express abandonment pursuant to 37 C.F.R. § 1.138(c), with respect to United States Patent Application Serial Number 12/925,329. The express abandonment request **MUST** be submitted via the United States Patent and Trademark Office Electronic Filing System (EFS-Web);

No later than **March 8, 2012, at 5:00 p.m.**, Jeffrey Moon **MUST** cause a report to be provided to the Court or to counsel for CAC confirming that he has filed with the United States Patent and Trademark Office with respect to United States Patent Application Serial Number 12/925,329, the continuation application, the non-publication request, and the express abandonment of the subject patent application;

This Order is conditioned upon CAC giving security by depositing with the Clerk of Court the sum of $100,000.00 in a cashier's check or other certified funds within ten days of the date of entry of this Order to secure the responsibility of CAC to compensate the the Defendants for costs and other injury that the Defendants may incur should it be determined that CAC's preliminary injunction motion was improvidently granted; and

Further proceedings with respect to the hearing on CAC's emergency motion for contempt will be conducted **by telephone on March 7, 2012, at 10:00 a.m.**, unless otherwise ordered by the Court. The Court will initiate the call.

In preparation for that hearing, the parties are directed to file any papers addressing CAC's emergency motion for contempt and for the abandonment of the patent application, and the JM Defendants' motion to strike sufficiently in advance of the hearing so that the Court may address any issues presented.

Dated at Milwaukee, Wisconsin, this 5th day of March, 2012.

BY THE COURT:

*Rudolph T. Randa*

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**