UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CENTRIFUGAL ACQUISITION CORP., INC.,
d/b/a Centrifugal Castings, a Delaware Corporation,

        Plaintiff,

   -vs-                                          Case No. 09-C-327

ADRIAN A. MOON, BELINDA L. MOON,
BELINDA MOON, LLC, a Wisconsin limited
liability company, JEFFREY A. MOON,
JM CASTING CO., LLC, a Wisconsin limited liability
company, CENTRIFUGAL CASTING, LLC n/k/a
MOON INVESTMENTS, LLC, a Wisconsin limited
liability company, and BELINDA & ADRIAN, LLC, a
Wisconsin limited liability company, and U.S. BATTERY
MFG. AUGUSTA, INC. d/b/a U.S. BATTERY
MANUFACTURING, CO., a Georgia corporation,
J. BENNETT MULLINAX, NEAL P. PIEROTTI, and
DAVID KAPPOS, Director of the United States
Patent and Trademark Office,

        Defendants.

---

# DECISION AND ORDER

"Some litigants in pursuing settlement of their claims hold the belief that they can change their mind at any time before they actually sign the agreement. . . . [T]hat perception is often unfounded in the law." *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 337 (7th Cir. 2000). So it is here. After months of negotiations, Jeffrey Moon repudiated the efforts of his lawyers to settle this case. Moon's attorneys, Joseph Seifert and Evan Knupp, moved to withdraw because Moon threatened to sue them. Moon then filed a *pro se* declaration, explicitly waiving the attorney-client privilege in order to "submit evidence on record of the

fraud that is being perpetrated" by his attorneys. ECF No. 301, Declaration of Jeffrey Moon, ¶ 50. This evidence, combined with the evidence submitted by Centrifugal Acquisition Corporation in support of its motion to enforce the settlement agreement, clearly demonstrates that the parties reached an enforceable settlement agreement.

This Court has inherent authority to enforce a settlement agreement in a case pending before it. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996); *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) (trial court "has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it"). An agreement to settle claims in federal court is enforceable "just like any other contract" pursuant to the applicable state law governing contracts. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (*see also Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002); *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380-81 (1994)). Under Wisconsin law, a valid settlement requires an offer, an acceptance and consideration all resulting from a meeting of the minds. *Am. Nat'l Prop. & Cas. Co. v. Nersesian*, 689 N.W. 2d 922, 927 (Wis. Ct. App. 2004). Additionally, Wisconsin has a statute which provides that no "agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court or during a proceeding . . . *or made in writing and subscribed by the party to be bound thereby or the party's attorney*." Wis. Stat. § 807.05 (emphasis added). The purpose of this statute is to "prevent disputes and uncertainties as to what was agreed upon." *Adelmeyer v. WEPCO*, 400 N.W. 2d 473, 475 (Wis. Ct. App. 1986). It is an "exception to the normal rule

that oral contracts are binding. Section 807.05 *adds* requirements for enforceability of an otherwise valid agreement when the agreement is reached in the course of a claim that is in the process of adjudication." *Kocinski v. Home Ins. Co.*, 452 N.W. 2d 360, 365 (Wis. 1990) (emphasis in original).

CAC's January 25 Supplemental Memorandum provides a helpful, straightforward summary of the negotiations and the ultimate settlement. On Monday, December 17, Daniel Klapman, counsel for CAC, wrote to Seifert and Knupp: "Evan: Per our discussion last night, this email confirms that since my 11/28/12 email, including additional telephone discussions between you and me in the interim, we have agreed to general terms of settlement, which include the following: . . . While this . . . comprises the general terms, as we discussed, some details remain to be worked out between the lawyers in a formal written settlement agreement." ECF No. 291-1. Attorney Knupp responded a few hours later: "Dan, This email confirms that we have reached an agreement in principal on the general terms of a settlement (as specified in your 12/17/2012 email) with additional details to be worked out as noted . . ." ECF No. 291-2. This email exchange proves the existence of a settlement agreement, even though there were some "details" to be worked out. It also satisfies the "written subscription" requirement of Section 807.05, Wis. Stats. *In re Estate of Johnson*, 709 N.W. 2d 88, 91 n.4 (Wis. Ct. App. 2005) ("We see no reason that an exchange of letters between counsel cannot constitute a binding settlement agreement under § 807.05, provided that all material terms are in writing and are clearly accepted in a writing subscribed by the party to be bound or that party's attorney"). Moreover, on the evening of

December 16, Moon wrote to Knupp: "Evan, I agree to our phone conversation that we do have a negotiated settlement in principle on December 16, 2012. Stating that I, Jeff Moon, agree to the terms stated over the phone at 5:09 pm, December 16, 2012. This is for your [confirmation] of todays phone call." ECF No. 301-3. This email illustrates that Moon's attorneys had authority to settle the case, as they did, on Moon's behalf. *See, e.g., Pohl*, 213 F.3d at 338 (explaining that, under Indiana law, "in order to bind a client to a settlement, an attorney must have either express, implied, or apparent authority, or must act according to the attorney's inherent agency power. . . . [R]etention of an attorney does not, in itself, confer implied or apparent authority to settle. The authority to settle, therefore, derives from other actions of the client with respect to the attorney or third parties, including but not limited to express grants of actual authority").

What remains are the precise details of the settlement, and of course, the pending motions to withdraw filed by Moon's attorneys. In order to avoid any confusion on the issue, the Court will hold the motions to withdraw in abeyance until the parties file a proposed order for judgment that reflects the negotiated terms of settlement between CAC and on behalf of Jeffrey Moon and JM Casting Co., LLC. Once that document is filed, the Court will grant the motions to withdraw and direct the Clerk of Court to enter judgment dismissing this case.[1] At that point, counsel's representation of the JM Defendants will be at an end.

---

[1] It appears that the settlement will moot the pending claims against defendants J. Bennett Mullinax, Neal Pierotti, and David Kappos, Director of the United States Patent and Trademark Office, in addition to the pending motion for contempt. ECF No. 232. If this is incorrect, CAC should offer an explanation in conjunction with the settlement papers.

-4-

-5-

As an aside, the Court wishes to express its gratitude to Attorneys Joseph Seifert and Evan Knupp for continuing to represent a difficult client under such uniquely trying circumstances.

**IT IS HEREBY ORDERED THAT** CAC's emergency motion to enforce the settlement agreement [ECF No. 290] is **GRANTED**. The parties should submit an order for judgment within **ten (10) days** of the date of this Order.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2013.

**BY THE COURT**:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**